**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Daniel D. Domenico**

Civil Action No. 1:26-cv-01747-DDD-STV

HOAN XUAN PHAM,

      Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden of the Aurora
    Contract Detention Facility;
GEORGE VALDEZ, in his official capacity as Denver Field Office
    Director, U.S. Immigration and Customs Enforcement;
MARKWAYNE MULLIN, in his official capacity as Secretary, U.S.
    Department of Homeland Security;
DAVID VENTURELLA, in his official capacity as Acting Director of
    U.S. Immigration and Customs Enforcement; and
TODD BLANCHE, in his official capacity as Acting Attorney General,
    U.S. Department of Justice,

      Respondents.[1]

---

## ORDER

---

Petitioner Hoan Xuan Pham seeks a writ of habeas corpus directing his release from immigration detention. Doc. 1. For the following reasons, the respondents must submit a status report regarding their efforts to effectuate the petitioner's removal.

---

[1] To the extent that any of the original respondents has ceased to hold office during the pendency of this action, that party's successor "is automatically substituted as a party," and "any misnomer not affecting the parties' substantial rights must be disregarded." Fed. R. Civ. P. 25(d).

- 1 -

## BACKGROUND[2]

The petitioner is a forty-two-year-old native and citizen of Vietnam. Doc. 1 at 8. He entered the United States in 1996 and became a Lawful Permanent Resident in 1997. *Id.* at 8; Doc. 3-1 at 2.

In 2003, the petitioner was convicted in Colorado of Vehicular Homicide – Reckless Driving and Leaving the Scene of an Accident Involving Death. Doc. 14 at 2.[3] In 2004, he was convicted in Colorado of Second-degree Burglary of a Dwelling. *Id.* On April 30, 2007, the Department of Homeland Security detained the petitioner and issued a Notice to Appear, initiating removal proceedings under 8 U.S.C. § 1229a and charging him with being deportable for having been convicted of a felony crime of violence and two or more crimes involving moral turpitude. Doc. 14-1 at 2. On May 15, 2007, an Immigration Judge issued a final order of removal to Vietnam. *Id.*; Doc. 1 at 7, 8; Doc. 3-1 at 2.

On May 30, 2007, U.S. Immigration and Customs Enforcement submitted a travel-document request to the government of Vietnam. Doc. 14 at 3. On August 22, 2007, ICE released the petitioner from detention under an order of supervision. *Id.*; Doc. 1 at 7, 8; Doc. 3-1 at 2. At the time of his release, ICE had not received a travel document for the petitioner. Doc. 14 at 3. The petitioner complied with all of his conditions of supervision. Doc. 1 at 3, 7, 8; Doc. 3-1 at 2.

---

[2]    In this Order, pinpoint citations to the record use the blue page number appended by the Court's Electronic Case Filing system at the top of each page, which may differ from a document's internal pagination.

[3]    The respondents submitted a declaration from Deportation Officer Michael Ketels in support of their response. Doc. 14-1. The declaration as filed is missing two pages. *See id.* The petitioner has not objected to the absence of those pages from the record, and I presume that the citations to those pages in the respondents' brief accurately reflect the facts that Officer Ketel declared therein. *See* Fed. R. Civ. P. 11(b).

On September 24, 2025, ICE detained the petitioner when he appeared for a scheduled check-in. *Id.* at 7, 8; Doc. 3-1 at 2; Doc. 14 at 3. According to the respondents, "[t]hereafter, ICE worked on completing a travel document request on behalf of Petitioner, which included providing Petitioner with a travel document application to complete and gather supporting documents, some of which required translation." Doc. 14 at 3. In November 2025, ICE interviewed the petitioner, and he cooperated with ICE's request to fill out paperwork so that ICE could acquire a travel document for him. Doc. 1 at 9; Doc. 3-1 at 2. On February 8, 2026, ICE submitted a travel-document request to the government of Vietnam. Doc. 14-1 at 3. According to the respondents:

> In recent months, the government of Vietnam has issued travel documents upon request in cases similar to Petitioner's case. Also recently, ICE has successfully removed several Vietnamese citizens back to Vietnam. For example, in March 2026, ICE arranged two Special High Risk Charter (SHRC) flights that included several removals to Vietnam. An SHRC involves increased security protocols and planning, and more involved diplomatic procedures and international cooperation. ICE expects to remove Petitioner once the travel document is issued and received by ICE.

*Id.*

The petitioner asserts that (1) ICE revoked his order of supervision without adequate procedures in violation of applicable regulations, the *Accardi* doctrine, and procedural due process; (2) there is no significant likelihood that he will be removed in the reasonably foreseeable future, so his continued detention violates the Immigration and Nationality Act and substantive due process; and (3) the respondents' revocation of his order of supervision was arbitrary and capricious in violation of the Administrative Procedure Act. Doc. 1 at 3, 8-23.

## LEGAL STANDARD

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief may be granted if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to hear statutory and constitutional challenges to immigration detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001); *Sierra v. INS*, 258 F.3d 1213, 1217-18 (10th Cir. 2001).

## DISCUSSION

### I. Release is not the appropriate remedy for any procedural violations.

The petitioner argues that he should be released because the respondents violated applicable regulations and procedural due process when they revoked his order of supervision and re-detained him in September 2025. Doc. 1 at 13-19, 22-23; Doc. 17 at 7-12.

As noted above, the petitioner was released under an order of supervision on August 22, 2007, ninety-nine days after his final order of removal. The respondents state that he was released following "a Post Order Custody Review pursuant to 8 C.F.R. § 241.4." Doc. 14 at 3; *see also* 8 U.S.C. § 1231(a)(3) (noncitizen ordered removed may be released subject to supervision after ninety-day removal period); 8 C.F.R. § 241.4(e)-(k) (noncitizen ordered removed may be released after removal period if travel documents are not available and noncitizen is nonviolent, not likely to pose a threat to the community, not likely to violate

- 4 -

conditions of release, and not a significant flight risk). The petitioner asserts that his release was based in part on ICE's conclusion "that his removal was not significantly likely in the reasonably foreseeable future," Doc. 1 at 8, but there is no evidence in the record reflecting that he was released pursuant to such a determination under 8 C.F.R. § 241.13. *See* 8 C.F.R. § 241.4(b)(4), (i)(7) ("The custody review procedures in this section do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future."); 8 C.F.R. § 241.13(b) ("Section 241.4 shall continue to govern the detention of aliens under a final order of removal . . . unless the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future.").

If the government releases a noncitizen pursuant to 8 C.F.R. § 241.4, that release may be revoked "in the exercise of discretion when, in the opinion of" the Executive Associate Commissioner or a district director:

> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2). The noncitizen must be "notified of the reasons for revocation of his or her release" and then must be "afforded an initial informal interview promptly after his or her return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1). Revocation of a release under Section 241.4, unlike revocation of a release under Section 241.13, does not require a determination that "changed circum-

stances" have made the noncitizen's removal reasonably foreseeable. *See* 8 C.F.R. §§ 241.4(b)(4), 241.13(i)(2).

Though the respondents may not have initially notified the petitioner of the reasons for revoking his release, they have now represented that he was re-detained "pursuant to 8 C.F.R. § 241.4(l)(2) because ICE had determined that it was appropriate to enforce the removal order." Doc. 14 at 3, 7. "The respondents have thus cured their initial failure to provide notice." *Jefremovs v. Baltazar*, No. 1:26-cv-00530-DDD-KAS, slip op. at 11 (D. Colo. July 10, 2026), ECF No. 20; *cf. Depelian v. Baltazar*, No. 1:25-cv-03765-SKC-TPO, slip op. at 9-11 (D. Colo. Jan. 20, 2026), ECF No. 18 (respondents violated procedural due process by re-detaining petitioner without following procedure for terminating humanitarian parole, but no habeas remedy available because they cured violation post-detention); *Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932, at *2 to *3 (W.D. Okla. Oct. 31, 2025) ("While the government failed to provide a Notice of Revocation of Release to Petitioner . . . such error has been . . . cured by the opportunities Petitioner has had to contest his detention, both in front of ICE and this Court."). It also appears that, though they may not have done so "promptly," the respondents have provided the petitioner with the informal interview required by 8 C.F.R. § 241.4(l)(1): they state that "[o]n January 1, 2026, ICE conducted a personal interview with Petitioner," at which he "was given the opportunity to make a statement and provide documentation relevant to his custody review." Doc. 14 at 3. And even if there were some ongoing procedural violation with respect to the petitioner's detention, "[t]he appropriate remedy . . . [would not be] release, but rather to ensure that the petitioner receives the process to which he is entitled under the regulation[s]." *Jefremovs*, slip op. at 11 (citing *Rustami v. Noem*, No. 25-3160-JWL, 2025 WL 3760744, at *4 (D. Kan. Dec. 30, 2025) (appropriate remedy was substitute process, not release,

where petitioner was not provided with informal interview)); *see also Guerra v. Bondi*, No. CIV-25-1240-G, 2026 WL 114258, at *8 (W.D. Okla. Jan. 15, 2026) (ordering respondents to either provide petitioner with notice and custody review required by 8 C.F.R. § 241.4(l)(3) or release him); *cf., e.g.*, *Santillan Quioroz v. Mullin*, — F.4th —, No. 26-6019, 2026 WL 1876709, at *17 n.13 (10th Cir. June 30, 2026) ("Because [the petitioner] can properly be subject to detention under § 1226(a)," "the district court shall order the Government to . . . either provide him with a bond hearing or else release him.").

## II. The respondents must file a status report regarding whether the petitioner's removal is reasonably foreseeable.

The petitioner also argues that he should be released because his removal is not reasonably foreseeable. Doc. 1 at 19-22; Doc. 17 at 2-7.

If a noncitizen is ordered removed, he becomes subject to mandatory detention under 8 U.S.C. § 1231 during the ninety-day "removal period," which begins when the order of removal becomes "administratively final."[4] *See* 8 U.S.C. § 1231(a)(1)(B)(i); *Johnson v. Guzman Chavez*, 594 U.S. 523, 528, 533-34 (2021). As discussed above, the petitioner here was detained during the ninety-day removal period in 2007 before being released on supervision.

If a noncitizen is not removed from the United States during the removal period, the government may in some circumstances continue to detain him under Section 1231 while it attempts to effectuate removal, but that detention may not be indefinite. *See* 8 U.S.C. § 1231; 8 C.F.R. §§ 241.4, 241.13; *Guzman Chavez*, 594 U.S. at 528-29; *Zadvydas*, 533 U.S. at 688-701. Detention may continue only so long as removal is rea-

---

[4]   The other two triggers for the beginning of the removal period—a court order lifting a stay and release from non-immigration detention or confinement—are not at issue here. *See* 8 U.S.C. § 1231(a)(1)(B)(ii)-(iii).

sonably foreseeable. *Zadvydas*, 533 U.S. at 699; *accord Clark v. Martinez*, 543 U.S. 371, 377-86 (2005); *Morales-Fernandez v. INS*, 418 U.S. 1116, 1123-24 (10th Cir. 2005). After six months of detention, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either "respond with evidence sufficient to rebut that showing," *Zadvydas*, 533 U.S. at 701, "or release the alien," *Guzman Chavez*, 594 U.S. at 529. *See also* 8 C.F.R. § 241.13.

The petitioner has now been detained for nearly ten months since September 24, 2025. And he may have satisfied his initial burden. *See* Doc. 1 at 13; Doc. 17 at 3-5; Doc. 3-1 at 3 ("I have asked ICE what the status of my travel document is and they have not provided any clear answers. . . . ICE has not given me a timeline for removal . . . ."); *Pan v. Blanche*, No. 1:26-cv-00599-SBP, 2026 WL 947935, at *3 (D. Colo. Apr. 8, 2026) (noncitizen's burden "is not especially high"). Whether or not he has satisfied his burden, the respondents have responded with evidence suggesting that the petitioner's removal is reasonably foreseeable—they have submitted a travel-document request on the petitioner's behalf, and they expect that request to be granted because the government of Vietnam has recently issued travel documents in cases similar to the petitioner's. Doc. 14-1 at 3.

But the government generally must demonstrate more than the fact that "good faith efforts to effectuate . . . deportation continue." *Zadvydas*, 533 U.S. at 702. Instead, it must show "legitimate progress towards removal." *Fadwa v. Lyons*, No. 25-cv-03660-PAB, 2025 WL 3525026, at *6 (D. Colo. Dec. 9, 2025); *cf. Lawrence v. McElroy*, 112 F. App'x 805, 805-06 (2d Cir. 2004) (district court correctly denied habeas petition where respondents indicated that travel documents were available for petitioner and his removal could be effected expeditiously after

resolution of the petition); *Hosan v. INS*, No. 3:CV-06-482, 2006 WL 2520616, at \*5 (M.D. Pa. Aug. 29, 2006) (removal reasonably foreseeable where respondents submitted "evidence that a request for [a] travel document was submitted to Bangladesh, and that this country has now issued a travel document for the repatriation of Petitioner"). And while the record indicates that the respondents have successfully removed some number of Vietnamese nationals in recent months, Doc. 14-1 at 3; Doc. 17-2 at 28, 31, the respondents have not supplied the Court with information regarding what percentage of travel-document requests Vietnam has granted in that timeframe, or any information regarding how long it typically takes the government of Vietnam to respond to a travel-document request. Therefore, before making a final decision as to whether the petitioner's removal is reasonably foreseeable in this case, I will require the respondents to submit a status report regarding the petitioner's travel document and any other progress they have made toward effectuating his removal in the two months since they filed their response. *Cf. So v. Baltazar*, No. 1:26-cv-01433-DDD-CYC, slip op. at 5-6 (D. Colo. July 16, 2026), ECF No. 14.

## CONCLUSION

It is **ORDERED** that the respondents must file a status report on or before **August 4, 2026** regarding their efforts to effectuate the petitioner's removal and whether his removal is reasonably foreseeable.

DATED: July 21, 2026                BY THE COURT:

Daniel D. Domenico
Chief United States District Judge

- 9 -